**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

XAVIER DMETRI NAILING,                    No. CIV S-09-2475-MCE-CMK

　　　　　　　Plaintiff,

　　vs.                                   <u>FINDINGS AND RECOMMENDATIONS</u>

B.D. FOSTERER, et al.,

　　　　　　　Defendants.

_____/

　　　　　　　Plaintiff, a former prisoner proceeding pro se, brings this civil rights action

pursuant to 42 U.S.C. § 1983.  Pending before the court are: (1) defendant Bemrick's motion to

dismiss (Docs. 29 & 67); the remaining defendants' separate motion to dismiss (Doc. 45); and

defendants' motion to strike plaintiff's sur-reply (Doc. 63).[1]

/ / /

/ / /

/ / /

/ / /

_____

[1]　　　Defendants correctly note that the rules do no permit a sur-reply.  The motion to strike should be granted.

# I. PLAINTIFF'S ALLEGATIONS

This action proceeds on the amended complaint filed on March 2, 2010. The following 12 defendants remain in the action: B.D. Forsterer; K.O. Holman; P. Coughlin; I.M. Lucas; R. Pruitt; Stotz; A.D. Brown; C. Lewis; T.J. Vasquez; J. Torruella; I. Cardeno; and R.J. Bemrick.[2] Plaintiff alleges generally that defendants disregarded a serious risk to his safety and that, after he had been assaulted, defendants failed to respond to his serious medical needs.

More specifically, plaintiff alleges that defendants essentially labeled plaintiff a sex offender "by way of printing disorderly conduct; prostitution offer sex on a CDCR 128-G classification chrono." Plaintiff claims that such chonos are "circulated to all inmates in classification or via prison mail; so that inmates can prove to one another that one is not a sex offender." Plaintiff claims that it is well-known among inmates and prison staff that prisoners labeled as sex offenders "are attacked, stabbed, and or beaten." Plaintiff alleges that defendants must have known that he would be attacked as a result of the chrono "because of the high rate of inmate assaults in the past at Folsom State Prison . . . ." Plaintiff adds:

> Defendants had incorrect information in the Plaintiff central file that states Nailing is an effeminate homosexual that is incapable of defending himself from sexual harassment. The defendants knew the Plaintiff was an obvious target for assault. Yet put him in a dangerous (GP).

Next, plaintiff claims that "he would not be let out to eat with the rest of the Hispanics on his tier because he's black." According to plaintiff, defendant Lucas "changes the Plaintiff ethnicity from Hispanic to black causing further discrimination by defendant Martin and Pruitt stating to the Plaintiff 'your ass out.'" Plaintiff states that he was "then assaulted after defendant C. Lewis unlocked the tier gate let one of the attacker pass right by him, then the defendant pulled down the bar that unlocks all the cell waited until the Plaintiff cell was pushed open then pulled down the bar locking the Plaintiff cell open."

---

[2] Evans, Casey, and Martin were dismissed on April 15, 2011.

1    Plaintiff next claims that he was taken to see the prison doctor, defendant

2 Torruella.  According to plaintiff, defendant Torruella asked plaintiff one question quickly,

3 looked him over, and said "He's fine, he can go."  Plaintiff states that the next day he told

4 defendant Brown that he was unable to open his mouth to eat.  Defendant Brown instructed

5 plaintiff to complete a "sick call slip."  The next day, according to plaintiff, he told defendant

6 Stotz that he could not open his mouth to eat.  Again, plaintiff was instructed to complete a "sick

7 call slip" in order to be seen by prison medical staff.   Plaintiff states that, over the next two

8 weeks, he continued to complain to defendants that he could not open his mouth to eat.

9    Plaintiff next states that he was seen by a prison doctor to whom he repeated his

10 complaints of an inability to open his mouth to eat.  Plaintiff states "on information and belief"

11 that defendant Cardeno did not order any x-rays at the time, "there by delaying and causing

12 further serious injury to Plaintiff serious medical need."  According to plaintiff, several months

13 passed until his face was eventually x-rayed.  Plaintiff states that defendant Cardeno reviewed the

14 x-ray and determined that plaintiff had a fracture.  Plaintiff states that this diagnosis was

15 confirmed by an outside dentist and oral surgeon.  The oral surgeon also opined that plaintiff has

16 sustained nerve damage.   Plaintiff claims that the delay and/or denial of health care was

17 retaliation for his having filed inmate grievances in the past.

18    Plaintiff outlines the following timeline of events:

19 | July 17, 2008 | Upon plaintiff's arrival in the California prison system, his
20 | | ethnicity was listed as "Hispanic."

| September 4, 2008 | Plaintiff filed an inmate grievance because he learned that
21 | | his ethnicity had been changed to "Black."

22 | September 26, 2008 | Plaintiff's grievance was granted.

23 | October 30, 2008 | When plaintiff arrived at Folsom State Prison his ethnicity
24 | | was listed as "Hispanic."

/ / /

25 / / /

26 / / /

3

| | | |
|---|---|---|
| November 4, 2008 | Plaintiff appeared before the classification committee for placement.  Defendants Forsterer, Holman, and Coughlin were on the panel.  According to plaintiff: |

> . . . All three named defendants must agree upon any information that is placed after "sex" on any 128G chrono and they did.  This same committee also agreed to send the Plaintiff to general population when defendants should have known and upon information and belief did know that by placing any inmate on general population and printing anything after "sex" on one 128G chrono that its highly likely that; that inmate will be attacked. . . .

Plaintiff claims that the committee "used a misdemeanor to label the Plaintiff a sex offender. . . ."  Plaintiff states defendants' conduct "placed him in a category from which there is no return."

January 10, 2009   Plaintiff obtained a copy of the 128G chrono in question.  Plaintiff also claims that defendant Pruitt came to his cell and told him that, because he is listed as "Black," he would not be allowed out of his cell to eat with the general population.  Pruitt and defendant Martin told plaintiff that the Black inmates were on lock-down and that he would bring food to plaintiff's cell.

January 12, 2009   Plaintiff filed an inmate grievance "because he knew that he was not a sex offender and by classification placing disorderly conduct then stating prostitution on his 128G chrono. . . ."

January 26, 2009   Plaintiff was interviewed by Forsterer in connection with his grievance.  During this interview, plaintiff informed Forsterer that the sex offender designation was incorrect and that leaving such designation in his file created a risk of danger from other inmates.  According to plaintiff, defendant Forsterer told him that the sex offender designation was based on three crimes for which plaintiff served time in county jail.  Plaintiff states that these crimes were misdemeanors which "cannot be used against me in any way after probation is over."

January 29, 2009   Plaintiff's grievance concerning the sex offender designation based on prior misdemeanor convictions was denied.

///

///

4

| | | |
|---|---|---|
| February 2, 2009 | Plaintiff was interviewed by defendant Evans incident to a second-level review of plaintiff's grievance.  According to plaintiff, Evans "also denied it knowingly disregarding the safety of the Plaintiff." | |
| February 23, 2009 | Plaintiff states he was assaulted after defendants Pruitt and Lewis left his cell "locked open," thereby allowing another inmate to attack plaintiff.  After the assault, plaintiff was taken to the prison infirmary where he was examined by defendant Torruella. Plaintiff adds that he was sprayed with pepper spray by defendant Lewis.  According to plaintiff, he informed defendants Brown and Stotz that he cannot open his mouth to eat.  Brown and Stotz instructed plaintiff to complete a "sick call slip." | |
| February 26, 2009 | Plaintiff was interviewed by defendant Vasquez regarding the assault.  According to plaintiff, Vasquez asked whether the attack had anything to do with a sex charge to which plaintiff responded "I don't know but if it does its staff's fault for putting it on there."  Plaintiff states that Vasquez admitted: "Well we knew that Martinez was going to do something." | |
| March 1, 2009 | Plaintiff complained of dizzy spells and swelling in his left jaw and submitted a medical request form. | |
| April 16, 2009 | Plaintiff submitted another medical request form regarding his jaw. | |
| April 20, 2009 | Plaintiff's jaw and head were x-rayed.  On this same day, defendant Cardeno "did in fact discover that the Plaintiff had a fracture on the left side of his face, yet did not send the Plaintiff to get treated causing the Plaintiff to indure [sic] more pain and greater injury."  According to plaintiff, Cardeno sent the x-rays to an outside hospital for further evaluation. | |
| April 23, 2009 | Plaintiff states that defendant Bemrick (apparently a doctor at the outside hospital) "knew that the Plaintiff had previously been diagnosed with a fracture of the left jaw and on 4-23-09 issued a report that was false causing the Plaintiff to not get treated and by doing so causing the Plaintiff greater injury and pain." | |

///

///

///

5

## II.  STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id.  at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

1    In deciding a Rule 12(b)(6) motion, the court generally may not consider materials

2    outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

3    Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider:

4    (1) documents whose contents are alleged in or attached to the complaint and whose authenticity

5    no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in

6    question, and upon which the complaint necessarily relies, but which are not attached to the

7    complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents

8    and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370,

9    1377 (9th Cir. 1994).

10    Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

11    amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

12    curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

13

14    **III.  DISCUSSION**

15    In his motion to dismiss, defendant Bemrick argues that plaintiff cannot state a

16    civil rights claim against him under § 1983 because, at best, the facts alleged give rise to a claim

17    based on medical negligence.  The remaining defendants similarly argue in their motion to

18    dismiss that plaintiff cannot state a constitutional claim against any of them because the facts

19    alleged reveal that they were not deliberately indifferent.

20    The treatment a prisoner receives in prison and the conditions under which the

21    prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel

22    and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan,

23    511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts

24    of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102

25    (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v.

26    Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

7

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.  The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, also gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant

injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Bemrick – As set forth in the amended complaint, plaintiff's allegations regarding defendant Bemrick are as follows:

> On 4-20-09 the Plaintiff jaw and head were x-rayed. This same day defendant I Cardeno did in fact discover that the Plaintiff had a fracture on the left side of his face, yet did not send the Plaintiff to get treated causing the Plaintiff to indure more pain and grater injure. Defendant I Cardeno sent the x-rays to Mercy Medical Center upon information and belief for a

9

1
2
3
> second and through opinion of the fractur that was found.  Defendant R.J.
> Bemrick of Mercy Medical Center knew that the Plaintiff had previously
> been diagnosed with a fracture of the left jaw and on 4-23-09 issued a
> report that was false causing the Plaintiff to not get treated and by doing so
> causing the Plaintiff greater injury and pain.

4   Defendant Bemrick argues that these facts suggest, at best, a claim for professional negligence

5   based on his reading of plaintiff's x-rays.  In his opposition to defendant Bemrick's motion,

6   plaintiff does not suggest any facts which would indicate that plaintiff's claim is based on

7   anything other than negligence.  In fact, plaintiff argues throughout his opposition that defendant

8   Bemrick has essentially admitted his negligence.  Plaintiff does not, however, argue that

9   defendant Bemrick completely ignored his need for medical treatment, or unreasonably delayed

10  providing medical treatment.  To the contrary, plaintiff clearly alleges that defendant Bemrick did

11  provide medical treatment – he read x-rays – but that defendant Bemrick was mistaken in his

12  professional assessment.  The court agrees with defendant Bemrick that the facts alleged by

13  plaintiff do not give rise to a constitutional claim of deliberate indifference.  Because there are no

14  other federal claims against defendant Bemrick, the court should decline to exercise

15  supplemental jurisdiction over any state law tort claim plaintiff may have against defendant

16  Bemrick, who should be dismissed from this action.

17          Defendants Brown and Stotz – As to defendants Brown and Stotz, the remaining

18  defendants argue that they could not have been deliberately indifferent to plaintiff's medical

19  needs because, under California prison regulations, only treating physicians may provide medical

20  care.  Defendants conclude that, because Brown and Stotz are correctional officers and not

21  medical officers, they were not permitted to provide medical care and, therefore, they cannot

22  have been deliberately indifferent to a medical need they were prohibited from treating.

23  According to defendants:

24
25
26
> Defendants Brown and Stotz are correctional officers.  (citation to
> amended complaint omitted).  Plaintiff alleges that Defendants Brown and
> Stotz told him to fill out medical request forms after he complained of
> having difficulty opening his mouth to eat.  Plaintiff claims that
> Defendants Brown and Stotz should have known that he had a serious

10

1    medical condition and should have acted sooner and taken him to see a
     doctor to prevent needless pain and suffering.

2            Plaintiff's allegations fail to show deliberate indifference.  As
     correctional officers, Defendants Brown and Stotz are unqualified to

3    diagnose or treat Plaintiff.  (citation to California prison regulations
     omitted).  Plaintiff's negligence claim that Brown and Stotz "should have

4    known that he had a serious medical condition" fails to state a deliberate
     indifferent claim.  (citation omitted).  No inference could be drawn from

5    Plaintiff's allegations that Defendants were deliberately indifferent to his
     serious medical needs.  The Court should dismiss Plaintiff's Eighth

6    Amendment claims against Defendants Brown and Stotz.

7           The court is not persuaded by defendants' argument that they could not have been

8    deliberately indifferent to medical needs they were unqualified and/or not permitted to treat.  The

9    flaw in defendants' argument can be seen by considering the hypothetical situation of a prisoner

10   who has fallen from the top bunk in his cell, hit his head during the fall, and landed on the floor

11   bleeding profusely from a large gash on his forehead.  Responding to calls from the injured

12   prisoner's cellmate, two correctional officers respond to the prisoner's cell.  They notice the

13   blood and the prisoner's obvious serious medical need but do nothing to assist the inmate.

14   Rather, they tell the inmate that they are not treating physicians and the regulations preclude them

15   from treating him and walk away.  Under this hypothetical, the two correctional officers were

16   clearly deliberately indifferent to the inmate's serious medical need even though they were not

17   responsible for providing medical treatment, and indeed would be precluded from doing so under

18   prison regulations.  In other words, a non-medical prison official can be deliberately indifferent

19   to a serious medical need.  The remaining defendants' motion to dismiss should be denied with

20   respect to defendants Brown and Stotz.

21           Defendants Torruella and Cardeno – The remaining defendants argue that, as to

22   defendants Torruella and Cardeno, the facts alleged in the amended complaint suggest, at best, a

23   claim of medical malpractice.  According to plaintiff, he was examined by defendant Torruella

24   on February 23, 2009, following the assault on him by another inmate.  Plaintiff claims that

25   Torruella asked plaintiff one question quickly, looked him over, and said "He's fine, he can go."

26   Plaintiff also claims that he was seen by defendant Cardeno regarding his complaints that he

1  could not open his jaw, but that Cardeno did not order x-rays, causing delay and further injury.

2  Plaintiff states that his jaw and head were later x-rayed by defendant Cardeno on April 20, 2009,

3  and that Cardeno noticed a fracture on the left side of plaintiff's face but failed to refer plaintiff

4  for further treatment.  Plaintiff does, however, allege that Cardeno sent the x-rays to an outside

5  hospital for further evaluation.

6  The court agrees with defendants that these allegations against Torruella and

7  Cardeno do not give rise to a constitutional claim based on deliberate indifference to his medical

8  needs.  Specifically, plaintiff clearly alleges that Torruella and Cardeno both in fact provided him

9  with some treatment – Torruella examined him briefly and Cardeno examined plaintiff and later

10  ordered x-rays which he sent to an outside facility for evaluation.  At best, plaintiff's claim

11  against these two medical providers is based on a difference of opinion between the defendants

12  and plaintiff as to his medical treatment.  As outlined above, such a claim is not cognizable under

13  § 1983.  As with defendant Bemrick, the court should not exercise supplemental jurisdiction over

14  any state law tort claim against defendants Torruella and Cardeno because no other federal

15  claims are alleged as against them, who should both be dismissed from the action.

16  <u>Defendants Forsterer, Coughlin, and Holman</u> – Defendants argue that plaintiff

17  cannot state a claim against defendants Forsterer, Coughlin, and Holman "because the

18  information in [plaintiff's] chrono was correct and did not create a serious risk of harm to him."

19  They conclude that they could not have been deliberately indifferent to any risk of injury to

20  plaintiff simply by placing correct information in plaintiff's file.  Defendants' argument is

21  unpersuasive.  As defendants note, plaintiff admits that he was convicted under California Penal

22  Code § 647.  Section 647(a) states that any person who solicits anyone to engage in, or who

23  engages in, lewd or dissolute conduct in a public place is guilty of disorderly conduct.  Section

24  647(b) states that a person who solicits prostitution or who agrees to engage in the act of

25  prostitution is guilty of disorderly conduct.  It is unclear under which section plaintiff was

26  convicted.  Thus, defendants could not have known whether his crime was related to prostitution

1   or not.  Despite this lack of clarity, defendants nonetheless listed "disorderly conduct;

2   prostitution offer" on the chrono form in describing whether plaintiff's crime was a sex offense.

3           The court must accept plaintiff's allegation that it is generally known among

4   correctional officers that prisoners who are labeled sex offenders are often targeted by other

5   inmates.  By listing "disorderly conduct; prostitution offer" on the chrono, it is possible that

6   others who saw this chrono could conclude that plaintiff's crime was a sex offense.  However,

7   this could not have been clear to defendants when the chrono was completed.  By not confirming

8   the nature of plaintiff's conviction, or not erring on the side of caution and leaving the question

9   of whether plaintiff's crime was a sex offense, a reasonable jury could conclude that defendants

10  were deliberately indifferent to the generally known risk sex offenders face in the prison general

11  population, where plaintiff was ultimately housed.  Given the foregoing, the court concludes that

12  plaintiff's allegations are sufficient to state a claim against defendants Forsterer, Coughlin, and

13  Holman.

14           Defendant Pruitt – Defendants argue that verbal harassment alone is insufficient

15  to state an Eighth Amendment claim.  Allegations of verbal harassment can form the basis of an

16  Eighth Amendment claim only if it is alleged that the harassment was "calculated to . . . cause

17  [the prisoner] psychological damage."  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.

18  1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318

19  (9th Cir. 1998).  In addition, the prisoner must show that the verbal comments were unusually

20  gross, even for a prison setting, and that he was in fact psychologically damaged as a result of the

21  comments.  See Keenan, 83 F.3d at 1092.  The court agrees with defendants that Pruitt's

22  statement "your ass is out" is ambiguous and does not necessarily constitute harassment.

23  Specifically, the statement is not unusually gross.  Moreover, there are no allegations that the

24  statement was calculated to cause plaintiff harm, or that plaintiff in fact suffered any actual

25  psychological damage as a result of Pruitt's statement.

26  / / /

13

1    Defendants also contend that defendant Pruitt cannot be liable under the Eighth

2    Amendment because "Pruitt did not assault Plaintiff." The basis of plaintiff's claim against

3    Pruitt, however, is not that Pruitt himself assaulted plaintiff. Rather, plaintiff claims that Pruitt

4    failed to take steps to protect his safety by leaving his cell door "locked open" knowing that

5    another inmate was likely to attack him. In other words, plaintiff claims that Pruitt knowingly

6    and intentionally allowed the assault to happen, which could constitute a constitutional violation.

7    While the court agrees with defendants that plaintiff has not stated a harassment claim against

8    Pruitt, the court finds that plaintiff's allegations are sufficient to state a failure-to-protect claim

9    against Pruitt.

10    <u>Defendants Lucas, Vasquez, and Lewis</u> – Defendants argue that plaintiff has not

11    stated a claim against Lucas, Vasquez, and Lewis "because there is [no] causal connection

12    between Defendants' conduct and Plaintiff's alleged violation of his Eighth Amendment rights."

13    As to Lucas, plaintiff claims that this defendant changed his listed ethnicity from Hispanic to

14    black. Plaintiff, however, also alleges that his grievance concerning this change was granted and

15    his ethnicity was corrected on prison paperwork. Further, there are no allegations that this

16    change by Lucas caused plaintiff any damage. Plaintiff's claim that he suffered discriminatory

17    treatment as a result of the mistake as evidenced by another guard's statement "your ass is out" in

18    insufficient because there is nothing inherently discriminatory in this alleged statement.

19    Defendant Lucas should be dismissed.

20    Defendants argue that plaintiff has not stated a claim against Vasquez, who

21    interviewed plaintiff following the assault, because "[t]here are no facts showing that Vasquez

22    assaulted Plaintiff or aided Plaintiff's assailant." This argument is not persuasive. Plaintiff very

23    specifically alleges that, when interviewed concerning the assault, Vasquez said: "Well we knew

24    that Martinez was going to do something." The reasonable inference to be drawn from this

25    statement is that Vasquez and others (the "we") knew (beforehand) that another inmate

26    (Martinez) was going to do something to plaintiff (i.e., the assault). If Vasquez had such

14

knowledge then, as with Pruitt, he may be liable to failing to take necessary steps to avoid the assault he knew might be coming.

Turning finally to defendant Lewis, defendants make the same argument – that he cannot be liable because "there are no specific facts showing that Lewis participated in the assault of Plaintiff, knew Plaintiff was going to be assaulted, and unlocked the gate for the purpose of allowing an inmate to assault Plaintiff."  Plaintiff claims that he was "assaulted after defendant C. Lewis unlocked the tier gate [and] let one of the attacker pass right by him, then the defendant pulled down the bar that unlocks all the cell waited until the Plaintiff cell was pushed open then pull down the bar locking the Plaintiff cell open."  The court agrees with defendants that this allegation is insufficient because there are no facts alleged showing that Lewis knew that the inmate(s) who passed him intended to assault plaintiff.  Plaintiff's claim that defendant Lewis left the cell door locked open for the purpose of allowing him to be assaulted is conclusory without facts suggesting that Lewis knew of an increased danger of likely assault if he left the door unlocked.  There are no such allegations.  Defendant Lewis should be dismissed.


## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.      Defendants' motion to strike (Doc. 63) be granted;

2.      Plaintiff's sur-reply filed on October 7, 2011, be stricken;

3.      Defendant Bemrick's motion to dismiss (Docs. 29 & 67) be granted;

4.      The remaining defendants' motion to dismiss (Doc. 45) be granted in part and denied in part;

5.      Defendants Bemrick, Torruella, Cardeno, Lewis, and Lucas be dismissed;

6.      Defendant Bemrick's motion for summary judgment (Doc. 70) be denied as moot; and

/ / /

7.     This action proceed on the first amended complaint as against defendants Forsterer, Coughlin, Holman, Brown, Stotz, Pruitt, and Vasquez, who should be directed to file an answer to the amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED:  March 2, 2012

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE